Myrick v. Jacks et al.

---

## MYRICK v. JACKS ET AL.

INFANTS: *Action against strangers for estate obtained from guardian.*

> A minor may maintain a suit in equity to compel one to account for the trust fund he has fraudulently obtained from his guardian for an inadequate consideration; but, if it be a suit for rescission, he must offer to restore to the defendant, as far as he is able, all the consideration he has received; otherwise, he can not claim entire restoration to his rights in the fund.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Thweatt & Quarles* and *B. C. Brown*, for appellant:

A person who purchases an estate (although for valuable consideration), with notice that the right is in another, makes himself a *mala fide* purchaser. The fraud consists in taking that which the taker knows belongs to another, and not in want of consideration. (*La Neve v. La Neve, 3 Atk., 646; 2 Eq. Lead. Cas. (3d ed.), 135, and notes; Duncan v. Jandons, 15 Wall., 175 ; Tyrrel v. Morris, 2 Dev. & Bat. Eq., 559, and note; Perry on Trusts, secs. 217, 828; Hill on*

Trustees, *164; Story Eq. Jur., sec. 1257; Davidson v. Young, 38 Ill., 148; Jones v. Shaddock, 41 Ala., 202; Bishop v. Bishop's Admr., 15 ib., 475; Morrison v. Kinstra, 55 Miss., 71; Sadler's Appeal, 87 Pa. St., 154.) The purchaser can have no better position than the trustee with whom he dealt. Joon v. Williams, 28 Miss., 571.

Appellant has the election either to keep the property given for her money, or repudiate the whole transaction, and demand that her moneys be paid to her, or, keeping what she has received, being charged for it at its fair value at the time when, attaining her majority, she received it, she may demand payment of the balance. Having committed no fraud, she is not bound to make compensation to Jacks, either for property conveyed to her father's second wife, or for rents received by her father; nor for deterioration in value. Griffin v. Younger, 6 Ired. Eq., 520; Davidson v. Young, 38 Ill., 148.

John C. Palmer, for appellee:

Although the proceedings in the Probate Court were coram non judice, yet the exchange was advantageous to appellant, and in equity and good conscience the agreement ought to be carried out. The parties can not be put in statu quo.

Tappan & Horner, also for apppellee:

For statement of facts and the law of the case, see 33 Ark., 425. The gist of the action is fraud, and the ground of fraud the gross inadequacy of the consideration caused by the over valuation of the Helena property. Contend that no fraud was shown, but that the exchange was made in good faith, and exceedingly advantageous and beneficial to appellant.

Myrick v. Jacks et al.

*Monroe Anderson*, also for appellee:

This was such a trade as a court of chancery would have ordered ratified and confirmed, being, as the testimony shows, exceedingly beneficial to appellant.

If appellee undertakes to restore appellant her property, rents, etc., she ought to restore to Jacks the property she got from him. *2 Kent, p. 267; Tyler on Infancy and Cov.*, secs. *35–6–7–8*.

Guardians may, where it is manifestly for the interest of an infant, change realty into personalty, and a chancery court will support their conduct if the act be such as the court itself would have done under like circumstances. *2 Story Eq. Jur.*, sec. *1357*.

*M. T. Sanders*, also for appellee:

Both Martin and Jacks acted in good faith and for the best interests of appellant. No fraud is shown.

Courts of chancery will regard the substance of agreements, and in furtherance of justice treat as done that which ought to be done. *2 Story*, secs. *770, 771*.

Guardians may change the nature of a minor's estate, under circumstances where manifestly for the benefit of the infant. *Ib.*, sec. *1357*.

This was not a naked trust. Martin had dominion over the property, coupled with an interest.

*U. M. & G. B. Rose*, also for appellee:

The exchange was beneficial, and no fraud shown.

EAKIN, J. The subject-matter of the complaint in this cause was succinctly stated in the opinion of this court heretofore delivered upon a demurrer. See *33 Ark*, *425*. It was then held that it set up equities demanding relief, and that it should be answered. To that opinion reference is

now made for the points decided, which become the law of the case.

Upon the return of the cause, the complaint was amended, so as to deny that the father of complainant was, at the time of the transactions impugned, entitled to forty per cent., or any other specific part of her estate. She admits that he was entitled to curtesy in the Louisville property whilst it remained unconverted ; and concedes that, after conversion by the sale, he was entitled to the use of the fund without interest during his life.

Defendant Jacks answered the bill fully as to all material points, admitting his sale, in 1861, of the Helena property to Martin and his daughter, or rather the agreement to sell, which was afterwards, in 1865, as he supposed, carried into effect under the sanction of the Probate Court; and that he did, as charged, receive from Martin, the father and guardian of complainant, the proceeds of that sale. He denies details, however, as to the amount received, and especially as to the comparative values of the properties, contending that he was rightfully entitled to interest at the rate of seven per cent. upon the estimated value of the Helena property from the time of the original bargain until its consummation ; and that the value of the Helena property was fully adequate to the fund received. He clearly and emphatically denies all fraudulent intent, asserts his entire good faith, at the time, setting forth the transactions in all its details, and explaining his motives, as well as those of Martin. He asserts that he supposed the transaction was proper, under the sanction of the court, and in general that it was beneficial, instead of prejudicial to complainant.

Upon this answer, the exhibits, and a large mass of evidence, the cause was heard. The Chancellor decided that the equity of the bill had not been sustained, and dis-

missed it accordingly, and the complainant, Josephine G. Myrick, now appeals upon the merits.

It will be observed that, whatever the original intention of the parties may have been in 1861, the transaction, when consummated in 1865, was not an exchange of property in Louisville for property in Helena. Such an exchange, the property remaining in the hands of the parties, might at any time within the period of limitation be rescinded by a court of chancery, if illegal and unconfirmed, in order to restore the status, so far as possible, of the injured party. It is not sought in this proceeding to recover the Louisville property. That had passed from the complainant into the hands of the Louisville purchasers.

Nor is it a case of election by a ward against a guardian, repudiating the ownership of property purchased with her funds, and seeking an account of the money with such interest and profits as the guardian should have made by a proper discharge of his trust. To such a proceeding the guardian would be a necessary party. In this case the suit was not brought with a view to any relief against him or his estate.

It is, in fact, a suit against a stranger to the trust, seeking indemnity for his conduct in fraudulently obtaining possession of a trust fund in the hands of her guardian, for an inadequate consideration. It is the law of this case that the suit in this aspect, may be maintained; but, in order to make it a suit for rescission, she should have offered to restore to the defendant, so far as she was able, all of the consideration which came to her hands. Otherwise she can not claim her entire restoration to her rights in the fund. It is the primary objects of courts of equity to adjust property rights upon fixed and recognized principles, binding the conscience. They never punish upon the policy of the criminal laws. Where the remedies they afford

amount to punishment, it is incidental; and because trustees by their laches or misconduct have so managed that severe rules of accountability must be applied to them, the more effectively to do justice to those whose rights they have confused or jeopardized.   Where it may be done, those who invoke their aid must offer to do justice to those whom they implead, regardless of the moral turpitude of the latter, however flagrant it may be charged to have been.  If the means by which Jacks, in this instance, acquired the fund were actually or constructively fraudulent, he would, with regard to it, be clothed with a trust, but it would be essential to a bill for rescission of the contract, that the complainant should offer to place him *in statu quo*, so far as she might be able.   To determine the nature of this suit, it is necessary to inquire whether this has been done.   The prayer is not specially for a rescission of the trade by which she became possessed of the property, the greater part of which she still retains.   It is in the alternative. She prays that Jacks may be held accountable for the fund in excess of the value of the lots received by her through her guardian, which she prays may be inquired of, or, if the court so decrees, she expresses a willingness to deliver up the lots.   There is also a prayer for general relief.

The first portion of this prayer has no reference to a rescission, but contemplates her continued enjoyment of the property acquired.   The alternative seems on the face of the bill to offer justice.   Yet it is developed on proof that a portion of the lots had been, in effect, exchanged, or given in payment, for a valuable plantation, or a considerable portion of it, which her concession did not cover. Also, that besides deriving through her father in his lifetime, the means of support from these lots, she had afterwards received a considerable income from the rents.   Of

Myrick v. Jacks et al.

these she offered no account, against the interest demanded of Jacks. The plantation was still under her control, and the court could not have decreed a rescission upon the terms which she had submitted.

This brings us face to face with the true question presented by the record. Did the court err in refusing the relief asked in the first part of the special prayer, or any relief under the general prayer? In other words, ought the court, without rescinding the contract, to have charged Jacks upon the account with the whole fund with interest, and credited him with the lots at a price adjusted by the court, and different from that which he had himself fixed in the bargain with Martin? Although that power might be conceded to a court of chancery, when necessary to relieve against a palpable and otherwise irremediable fraud, yet it is obviously a very dangerous one, to be exercised with extreme caution. Generally the courts do not make bargains for people, and fix the rates at which others shall take their property, although they will freely intervene to prevent the enforcement of unjust or illegal contracts, and must of necessity estimate the value of property lost, converted or destroyed.

It may be stated in the outset, that as Jacks knew the fund to belong to the minor, to deal with the guardian concerning it, in a manner beyond his powers was *constructively* fraudulent, and as against Jacks, upon proper application, in apt time, a rescission would have been decreed without hesitation. But that is not decisive of a suit of this nature, instituted ten years after the transaction. Courts of equity regard lapse of time, and intervening changes of circumstances, independently of statutes of limitations in determining the measure of relief which conscience demands. If there were no fraudulent intent, nor real injury, they will not be moved upon merely tech-

nical grounds, after a great lapse of time. This might often be doing a great wrong to effect a little right.

A careful consideration of the evidence reveals that the fund, nominally over eleven thousand dollars, was, under the peculiar circumstances of its creation, not available to Jacks, and would not have been to the ward, for that amount, by over a thousand dollars; that Jacks acted throughout in the most perfect good faith; that he sup- posed the order and sanction of the Probate Court to be effective to authorize the transaction; that there was no great disparity between the value of the property he con- veyed, and the whole fund; that the trade was at the time considered by the whole community of Helena as favora- ble to the minor and her father, who had curtesy in the fund; that the portion of the property conveyed to the father, was not greater than the value of his curtesy might then be fairly estimated to be; that the parties have enjoyed the property for a long series of years; that the ward grew from the age of fifteen years to womanhood, and was mar- ried and continued in the enjoyment of the property, with- out complaint on her own part, or any one for her, until her father's death; that she with her husband disposed of some of the property, and acquired a plantation from which they may be presumed to have derived essential means of support; and that, at the time, under all the circumstances now shown to us, it is highly probable, a court of chancery would have sanctioned and authorized the very transaction actually made.

Without intending to approve or excuse any unauthor- ized dealings with the property of minors, we are never- theless constrained to the belief that there was no estima- ble injury resulting to the ward, which could be remedied without injustice to one innocent in his intentions, and apparently fair in his conduct; and that the court did well

in denying the prayer of the bill. There is nothing that appeals to us in behalf of the complainant, as demanding practical redress, and we think she should have continued to acquiesce in the conduct and management of her father, which there is every reason to suppose, although illegal, was intended for and actually inured to her benefit. The interposition of the Chancellor was at first wholly discretionary; and is still so in theory, although he would not be allowed to abuse the discretion, and refuse a remedy plainly demanded by established rules of equity. We do not think this such a case, basing our judgment on the nature of the transaction, the lapse of time, the changed condition of the property, and the nature of the relief demanded, and that courts of chancery may well decline to be moved for trivial or technical reasons, where substantial justice does not require it.

Affirm the decree.